**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL CASE NO. 3:08cv520**

| | |
|---|---|
| **EMILY L. FORD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | <u>**MEMORANDUM OF**</u> |
| ) | <u>**DECISION AND ORDER**</u> |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ————————————— ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 12].

**I.    PROCEDURAL HISTORY**

The Plaintiff Emily L. Ford filed an application for a period of disability and for Social Security disability benefits on October 12, 2004, alleging that she had become disabled as of December 5, 2001. [Transcript ("Tr.") 18, 51-55]. The Plaintiff's application was denied initially and on reconsideration. [Tr. 33, 38]. A hearing was held before an Administrative Law Judge ("ALJ")

on July 23, 2007.  [Tr. 293-337].  On October 24, 2007, the ALJ issued a decision denying the Plaintiff benefits.  [Tr. 15-28].  The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  [Tr. 5-7].  The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920.  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  20 C.F.R. §§ 404.1520, 416.920.  Second, the claimant must show a severe impairment.  If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe

impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fourth step.

## IV.    FACTS AS STATED IN THE RECORD

The Plaintiff was born on July 12, 1941 and was 66 years old at the time of the ALJ's hearing.  [Tr. 51, 296].  The Plaintiff completed the 11th grade and received a high school equivalency degree.  [Tr. 297].  Her recent past work experience includes work as a secretary for her husband's grading business.  [Tr. 297, 306].

The Plaintiff has a history of lupus-type symptoms. On December 14, 2001, the Plaintiff was evaluated by Ahmad A. Kashif, M.D., for evaluation of a positive Antinuclear Antibody Test (ANA) with diffuse joint pain. Dr. Kashif noted that the Plaintiff had complained of joint pain and morning stiffness for the past six months, with symptoms increasing over the last two months. A physical examination revealed positive periarticular tenderness in the wrists and knees; significant limitation on external rotation of the left hip; and numerous positive tender points. While noting the positive ANA and the existence of some symptoms suggestive of inflammatory arthritis, Dr. Kashif noted that there was no criteria to fulfill the diagnosis of lupus. [Tr. 127-28]. In August 2004, the Plaintiff underwent a dermatology biopsy. Initial testing indicated probable lupus erythematosus. It was noted that the Plaintiff was taking a blood pressure medication that could possibly cause lupus. The Plaintiff was instructed to consult with her primary care physician about changing her blood pressure medication. [Tr. 122-26]. When she returned to see Dr. Kashif in October 2004, he noted that she still did not have the criteria to fulfill a diagnosis of lupus. [Tr. 131].

Despite the fact that the Plaintiff has never received a conclusive diagnosis of lupus, the medical records indicate that she does have a history

of joint pain. The records also show, however, that she has responded well to medication. On December 14, 2001, Dr. Kashif prescribed the Plaintiff Daypro for her joint pain. By her next visit on January 7, 2002, she reported some improvement in her pain, and by January 28, 2002, she reported that her hip was significantly better. An x-ray of her hip revealed no evidence of degenerative joint disease. [Tr. 127-30].

In November 2004, the Plaintiff began treatment with Carlos Jorge, M.D. At that time, she reported having significant back pain radiating into her legs and some bilateral wrist and finger pain. Dr. Jorge prescribed a short course of steroids and pain medication. [Tr. 233]. In February 2005, the Plaintiff had a flare of joint pain, and Dr. Jorge again prescribed steroid medication. By March 11, 2005, the Plaintiff reported doing well, and that the pain had improved significantly. [Tr. 235]. In September 2005, the Plaintiff returned to Dr. Jorge, complaining of pain in her knees, elbows, and wrists. She reported that pain medication brought only minimal relief. Dr. Jorge prescribed another round of steroids and encouraged her to follow up with her rheumatologist. [Tr. 241]. By October 2005, the Plaintiff reported that while she was still having some discomfort in her knees, her pain overall was "greatly improved." [Tr. 243]. In January 2006, the Plaintiff reported

experiencing pain and stiffness in her wrists, hands, knees. [Tr. 282]. The Plaintiff again saw Dr. Jorge on March 30, 2006, complaining of tingling in her left hand and feet. Dr. Jorge prescribed nerve pain medication. [Tr. 244-45]. By her next doctor visit on May 15, 2006, the tingling had improved, and the Plaintiff reported eating well and exercising, although she stated that she had some difficulty walking due to pain. [Tr. 249]. In March and June 2007, the Plaintiff reported that her knees were stiff and painful and that she was sore in her wrists, shoulders, and low back. [Tr. 273, 276]. In September 2007, the Plaintiff reported pain in her hip, both knees, right shoulder, and right wrist. She also reported having attended physical therapy six times and seeing some mild improvement. [Tr. 289].

The medical evidence shows that the Plaintiff has had some degenerative changes in her lumbar spine. On June 6, 2002, the Plaintiff presented to Carol Rupe, M.D. with complaints of low back pain radiating to her right calf. The Plaintiff reported that she had not found anything that helped to relieve the pain. Dr. Rupe ordered a lumbar spine x-ray and prescribed pain medication. [Tr. 151]. During a follow-up examination on June 11, 2002, Dr. Rupe noted that the x-rays revealed significant

degenerative joint disease in the spine, but that the Plaintiff reported some relief after the use of pain medication. [Tr. 152].

Beginning in July 2002, the Plaintiff was treated by Dr. Bruce Darden for low back pain. At that time, Dr. Darden noted that a lumbar MRI performed on June 25, 2002 had shown multi-level spondylosis with severe spinal stenosis at L4-5 due to a degenerative spondylolisthesis and broad-based disc protrusion. The Plaintiff reported that her walking was significantly limited and that she had to use a cane. The Plaintiff reported pain with standing and decreased symptoms with lying and sitting. She also reported that taking pain medications helped only slightly. The Plaintiff denied any numbness or tingling. Dr. Darden noted that the Plaintiff was able to stand on her toes and heels without difficultly. Sciatic tension tests were negative. While the Plaintiff had pain with extension of her back, Dr. Darden noted that her deep tendon reflexes were normal and that she had full range of motion in her hips. Dr. Darden concluded that the Plaintiff could be a candidate for decompression and fusion of the L4-5 vertebrae, but that the Plaintiff was not interested in pursuing a surgical option at that time. [Tr. 119].

The Plaintiff has also been treated for diabetes mellitus and hypertension, and the medical records indicate that both conditions have been

well-controlled with medication. [Tr. 147-210, 229-92]. For example, in May 2004, the Plaintiff reported that her home glucose readings had been excellent. An examination revealed that her blood pressure was well-controlled at 130/82. [Tr. 173-74]. In May 2006, Dr. Jorge noted that both the Plaintiff's hypertension and diabetes mellitus were controlled. [Tr. 249].

The Plaintiff underwent a consultative examination by Tyler Freeman, M.D. on December 30, 2004. Upon physical examination, Dr. Freeman noted that the Plaintiff had a decreased flexion of the right hip to 60 degrees and dependent pain on flexion. He also noted, however, that the Plaintiff's joints appeared normal, and that her deep tendon reflexes were full and equal bilaterally. Neurologically, Dr. Freeman found no motor or sensory deficits. The Plaintiff's muscle strength was 5/5 and she was able to perform heel-toe maneuvers, although she was unable to squat and rise. Dr. Freeman noted that the Plaintiff's grip strength was normal and that she was able to raise her arms overhead and perform dexterous movements of her hands. Dr. Freeman further noted that the Plaintiff's blood pressure was elevated. Dr. Freeman opined that the Plaintiff's current impairments may affect her ability to sit or stand for prolonged lengths of time, move about, and carry heavier objects. [Tr. 224-28].

The Plaintiff testified at the ALJ hearing that she cannot "stand for a long length of time," and that she experiences constant pain in her legs and knees. She stated that if she tries to carry something, it makes her side and back hurt. [Tr. 299]. She reported having to wear a back brace occasionally due to pain. [Tr. 301-02]. She further reported occasional pain in her shoulders, wrists, and hands. [Tr. 303, 318]. The Plaintiff stated that she has constant pain in her feet, which she attributed to bunions, hammertoes, and diabetes. Because of the pain in her feet, she must wear low-heeled shoes. [Tr. 303]. The Plaintiff further testified that she becomes fatigued easily and has little energy. [Tr. 304]. She spends most of her time either on the couch or in bed. [Tr. 305]. The Plaintiff reported having trouble with her memory sometimes, but she stated that it was "not bad." [Tr. 319].

The Plaintiff testified that she stopped working as a secretary for her husband's grading business in December 2001 because she "just couldn't do it any longer." [Tr. 305]. She testified that this business was operated out of their home. Her duties had included answering the phone, cutting payroll checks, paying bills, and some basic typing. [Tr. 306-07, 330-31].

The Plaintiff testified that she had been using a cane to walk for about three years. [Tr. 308]. She estimated that she could walk approximately a

block and a half with the assistance of her cane.  [Tr. 315].  She testified that she can stand approximately five minutes before her back starts to hurt.  [Tr. 316].  She testified that sitting straight up in a chair also hurts after five or ten minutes.  [Tr. 316].  The Plaintiff testified that she cannot stoop and can bend only a little because of her knees.  She testified that she would be unable to lift a gallon of water frequently.  [Tr. 317].

With respect to her activities of daily living, the Plaintiff testified that she drives herself to the grocery store and to church weekly, and sometimes to her daughters' homes and the senior citizens' center.  [Tr. 309].  When she does her grocery shopping, she leans on the cart for support.  The Plaintiff testified that she used to enjoy traveling and gardening but she has stopped doing these activities in the last few years.  [Tr. 310].  She reads and watches television every day.  [Tr. 311].  The Plaintiff further testified that she attends missionary meetings at her church, as well as meetings of the National Council of Negro Women, a community organization.  [Tr. 311-12].

The Plaintiff reported that she does not cook much. [Tr. 312].  She testified that she is unable to perform most household chores and that her daughters perform these for her.  [Tr. 312-13].  She further testified that she is able to dress herself and bathe herself by sitting in the shower.  [Tr. 313-

14].  She also testified that her daughter fixes her hair, as it causes pain in her shoulders to reach up to do it herself.  [Tr. 314, 319].

The Plaintiff's daughter, Judith Outlar, also testified at the ALJ hearing. Ms. Outlar testified that she performs various chores for her mother, including vacuuming, making the beds, and grocery shopping.  She stated that her younger sister does the Plaintiff's hair.  Ms. Outlar testified that the Plaintiff was capable of doing only light dusting or sweeping and could not lift anything heavy. [Tr. 325-26].  She stated that the Plaintiff frequently complains of fatigue and of pain in her back and knees.  She reported that the Plaintiff gets short of breath easily.  [Tr. 326].  Ms. Outlar testified that the Plaintiff's condition has worsened since she has stopped working.  [Tr. 327].  She further testified that even with a cane, her mother will frequently lose her balance.  [Tr. 328-29].

A Vocational Expert (VE) also testified at the ALJ hearing.  The VE classified the Plaintiff's past work as a secretary as sedentary and skilled, although he noted that the Plaintiff was performing the job at more of a semi-skilled level, as "there were certain deficiencies or certain areas that she didn't deal with."  [Tr. 331].  The VE opined that based upon the Plaintiff's

residual functional capacity, she would be capable of returning to her past relevant work as it was actually performed.  [Tr. 333].

## V.    THE ALJ'S DECISION

On October 24, 2007, the ALJ issued a decision denying the Plaintiff's claim.  [Tr. 15-28].  Using the five-step sequential evaluation process promulgated by the Social Security Administration, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ made the following findings.  At step one, the ALJ found that the Plaintiff had not engaged in any substantial gainful activity since her alleged onset date, December 5, 2001.  [Tr. 20].  The ALJ then found that the Plaintiff has the following severe medical impairments: high blood pressure, diabetes mellitus, degenerative disc disease of the lumbar spine, and history of lupus-type symptoms, but that none of these impairments, either singly or in combination, meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Tr. 21-22]. The ALJ then assessed the Plaintiff's residual functional capacity and determined that the Plaintiff has the residual functional capacity to perform medium work with no frequent stooping, crouching, kneeling, climbing or balancing; that she requires a sit/stand option; and that her chronic pain would rule out sustained concentration necessary for skilled work.  [Tr. 21].

13

The ALJ further concluded that the Plaintiff is capable of performing her past relevant work as a secretary, as this work does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. [Tr. 27]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date of December 5, 2001 through the date of the ALJ's decision, October 24, 2007. [Tr. 28].

## VI.   DISCUSSION

On appeal, the Plaintiff argues that the ALJ failed to evaluate properly her physical and mental limitations in assessing her residual functional capacity; that the ALJ erred in evaluating her subjective complaints and in making a conclusory credibility finding; that the ALJ erred in summarily concluding that the Plaintiff could return to her past relevant work without providing specific findings or analysis regarding the physical and mental demands of this work; that the ALJ failed to develop the record fully by failing to inquire of any conflicts between the VE's testimony and Dictionary of Occupational Titles (DOT); and that the ALJ's decision is not supported by substantial evidence.   The Court will address each of these assignments of error *seriatim*.

## A.   The ALJ's Residual Functional Capacity Determination

The Plaintiff first argues that the ALJ failed to evaluate properly her physical and mental limitations in assessing her residual functional capacity. [Doc. 11 at 13-16, 20-22].

In determining a claimant's residual functional capacity (RFC), the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. Soc. Sec. R. 96-8p. After identifying the claimant's functional limitations or restrictions, the ALJ must then assess the claimant's work-related abilities on a function-by-function basis. Id. If there is no evidence in the record to support the presence of a claimed physical or mental limitation, the ALJ must consider the claimant to have no limitation or restriction with respect to that functional capacity. Id. The burden is on the claimant to demonstrate how her impairments impact her functioning. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The Plaintiff contends that the ALJ's RFC finding failed to comply with Social Security Ruling 96-8p, as the ALJ failed to perform a function-by-function analysis of the Plaintiff's work-related abilities in light of her physical and mental limitations. [Doc. 11 at 16-17]. Contrary to the Plaintiff's argument, however, the ALJ did conduct an appropriate analysis of her work-

related abilities. The ALJ determined that the Plaintiff has the residual functional capacity to perform medium work that allows for a sit/stand option that does not require frequent stooping, crouching, kneeling, climbing or balancing or the sustained concentration necessary for skilled work. [Tr. 21]. By determining that the Plaintiff could perform medium work, the ALJ essentially found that the Plaintiff was capable of lifting fifty pounds occasionally and twenty-five pounds frequently, standing and walking on and off for six hours in an eight-hour day, and sitting intermittently for the remaining two hours. See Soc. Sec. R. 83-10. This conclusion is supported by medical evidence of record, particularly the consultative examination findings of Dr. Freeman, who opined that the Plaintiff's current impairments may affect her ability to sit or stand for prolonged lengths of time, move about, and carry heavier objects. [Tr. 224-28]. While the Plaintiff argues that the ALJ failed to explain how she could be capable of performing medium work while walking with a cane [Doc. 11 at 18], the Plaintiff fails to point to any medical evidence that demonstrates that she required a cane in order to ambulate. To the contrary, there is substantial evidence in the record to support a finding that her gait and coordination were normal, that she was able to stand on her heels and toes without difficulty, that her motor and

sensory functions were intact, that her strength was intact, and that she is able to walk normally. [See Tr. 119, 152, 162, 166, 169, 173, 181, 185-86, 189-90, 225-26, 244-45].

The Plaintiff also argues that the ALJ's RFC determination failed to account for her ability to perform sustained work on a "regular and continuing basis." [Doc. 11 at 18]. The ALJ's finding that a claimant can perform work at a certain exertional level, however, is an implicit determination that the claimant is able to sustain such work activity on a "regular and continuing basis." See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Thus, the Plaintiff's argument on this point is without merit.

The Plaintiff further argues that the ALJ's determination that she was impaired in her ability to sustain concentration for skilled work constituted a finding of a severe mental impairment, which should have been evaluated according to the procedure set forth in 20 C.F.R. §§ 404.1520a and 416.920a. [Doc. 11 at 20]. This argument is without merit. Contrary to the Plaintiff's contention, the ALJ did not find that the Plaintiff had a severe mental impairment. Rather, the ALJ found that the Plaintiff could not engage in the sustained concentration necessary for skilled work *due to her chronic pain*. [Tr. 21]. Because the ALJ's finding in this regard does not constitute a finding

of a severe mental impairment, the evaluation procedure set forth in §§ 404.1520a and 416.920a is simply not applicable in this case.

The Plaintiff has not alleged any severe mental impairment that the ALJ overlooked, nor has she submitted any psychiatric records to support such a claim. Indeed, the medical evidence of record is replete with observations by physicians that the Plaintiff appeared alert and oriented to three spheres, that her affect and demeanor were appropriate, and that her mental status and behavior were normal. [Tr. 158, 162, 166, 169, 173, 181, 186, 190, 214, 225]. The Plaintiff herself testified that although she has a problem with her memory on occasion, this problem is "not bad." [Tr. 319]. Because there is no evidence that the Plaintiff had a severe mental impairment that significantly limited her ability to perform work activities, the Court concludes that the ALJ did not err in assessing her residual functional capacity in this regard.

## B. The ALJ's Evaluation of Plaintiff's Credibility

The Plaintiff next argues that the ALJ erred in evaluating the Plaintiff's subjective complaints and in assessing her credibility. Specifically, she argues that the ALJ failed to provide specific reasons for rejecting her testimony as required by the Social Security regulations. [Doc. 11 at 19-20].

In assessing a claimant's credibility, an ALJ must first determine whether the objective medical evidence demonstrates the existence of a medically determinable impairment that could reasonably cause the alleged pain or symptom. Craig v. Chater, 76 F.3d 585, 596 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's testimony about her subjective complaints. Id. If the ALJ rejects the claimant's testimony, he must give "specific reasons" that are "grounded in the evidence." Soc. Sec. R. 96-7p. A claimant's subjective complaints of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig, 76 F.3d at 595.

In the present case, the ALJ properly evaluated the Plaintiff's subjective complaints. As a preliminary matter, the ALJ found that the objective medical evidence demonstrated the existence of four medically determinable impairments -- high blood pressure, diabetes mellitus, degenerative disc disease of the lumbar spine and a history of lupus-type symptoms -- that could reasonably cause the pain and other symptoms alleged. [Tr. 20, 24-25]. The ALJ then weighed the Plaintiff's testimony regarding the extent of her

pain and other symptoms. In so doing, the ALJ noted that while the Plaintiff testified that she could perform only minimal household chores and other daily activities because of pain, the Plaintiff's allegations were not confirmed in the medical evidence of record as a whole. Specifically, the ALJ noted that no treating or examining physician had ever documented with sufficient medical facts and clinical findings any impairment and related symptoms that would cause the persistent functional limitations that the Plaintiff claimed. Further, the ALJ found that the evidence showed that the Plaintiff could care for her own personal needs, and that her residual functional capacity, as established by the medical evidence, should allow her to perform these daily activities. [Tr. 27].

The ALJ did not completely reject the Plaintiff's subjective evaluation of her symptoms, however. While concluding that the Plaintiff was not totally disabled by her impairments and resulting symptoms, the ALJ did consider the Plaintiff's subjective complaints in finding that her chronic pain would rule out the sustained concentration necessary to perform skilled work. [Tr. 27].

For these reasons, the Court concludes that the ALJ did not err in assessing the Plaintiff's subjective complaints. The ALJ complied with the two-step credibility evaluation procedure set forth in Social Security Ruling 96-

7p and made the required findings, supported by sufficient reasons, based on the medical evidence of record.

## C.    The ALJ's Step Four Determination

The Plaintiff next argues that the ALJ erred in summarily concluding that she could return to her past relevant work without providing specific findings or analysis regarding the physical and mental demands of this work.  [Doc. 11 at 13-16].

In the fourth step of the sequential evaluation process, the ALJ must review the claimant's residual functional capacity and the physical and mental demands of work done in the past and determine whether the claimant can still perform that work.  20 C.F.R. § 404.1560(b).  In making this decision, the ALJ must consider whether the claimant retains the residual functional capacity to perform the duties of her particular past relevant work as those duties were actually performed.  Soc. Sec. R. 82-62.  A finding that a claimant has the capacity to perform past relevant work must be supported by (1) a finding of fact regarding the claimant's RFC; (2) a finding of fact regarding the physical and mental demands of the past job; and (3) a finding of fact that the claimant's RFC would allow her to return to her past job.  Id.  At this step, the burden is on the claimant to show that she has a physical or mental

impairment that precludes her from performing her past relevant work.  See Hall, 658 F.2d at 264.

The Plaintiff contends that the ALJ summarily concluded that the Plaintiff could return to this past relevant work without providing specific findings or analysis regarding the physical and mental demands of this work, as required by Social Security Ruling 82-62.  [Doc. 11 at 13].  A review of the ALJ's hearing reveals, however, that the ALJ made all of the findings required by Social Security Ruling 82-62.  Upon reviewing the medical evidence of record, the ALJ determined that the Plaintiff had the residual functional capacity to perform medium work that allowed for a sit/stand option, and which did not require frequent stooping, crouching, kneeling, climbing or balancing or the sustained concentration necessary for skilled work.  [Tr. 21].  The ALJ then compared the Plaintiff's residual functional capacity with the physical and mental demands of her past relevant work.  In so doing, the ALJ noted that while the VE classified the position of secretary as sedentary, skilled work, the VE had indicated that the Plaintiff had performed the job at the semi-skilled level.  [Tr. 27].  The ALJ further noted the VE's testimony that the Plaintiff's residual functional capacity would allow her to return to her past relevant work.  [Tr. 28].  As the Plaintiff was capable of performing medium

work with a sit/stand option, and her past work as a secretary was performed at the sedentary level and allowed for a sit/stand option with no requirement that she engage in frequent stooping, crouching, kneeling, climbing or crawling, the ALJ found that the Plaintiff could return to her past relevant work as a secretary, as she actually performed it. [Tr. 28]. Therefore, the ALJ fully complied with the requirements of Social Security Ruling 82-62, and the Plaintiff has failed to establish any deficiencies in his decision.

The Plaintiff further argues that in rendering his decision, the ALJ ignored the fact that she was working for her husband and had many accommodations made for her and therefore was not performing the job as secretary as described in the Dictionary of Occupational Titles (DOT). [Doc. 11 at 15]. The fact that the Plaintiff was not performing the position precisely as it is described in the DOT is not dispositive. "[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if [she] is capable of performing [her] past relevant work *either as* [she] *performed it or* as it is generally required by employers in the national economy." Pass, 65 F.3d at 1206 (emphasis added). Furthermore, the Plaintiff has failed to identify any specific accommodations that she was granted or that she required in order to perform the job of secretary. As the duties of the Plaintiff's past relevant

work are consistent with her residual functional capacity, the Plaintiff has failed to demonstrate any deficiency in the ALJ's determination at this step in the sequential evaluation process.

### D.    Inconsistencies Between the VE Testimony and the DOT

The Plaintiff argues that the ALJ failed to fully develop the record by failing to ask the VE about any inconsistencies between his testimony and the DOT. According to the Plaintiff, because the DOT's description of the position of secretary does not take into account the need for a sit/stand option, the ALJ was required to inquire into and resolve the conflict between the DOT's description and the VE's testimony regarding that position. [Doc. 11 at 23-24]. The Plaintiff's argument is without merit. The ALJ found that the Plaintiff's past work as a secretary, as it was actually performed, allowed for a sit/stand option. In response to the ALJ's hypothetical, which included this sit/stand restriction, the VE testified that with her residual functional capacity, the Plaintiff was capable of returning to her past relevant work as it was actually performed. The VE's testimony related to the Plaintiff's past relevant work as it was actually performed, which is an issue at the fourth step of the sequential evaluation procedure. Whether the DOT would allow for a sit/stand option for this type of position would only become relevant if the ALJ had to

proceed to the fifth step of the sequential evaluation procedure in order to determine whether there were alternatives to the Plaintiff's past relevant work that she could perform in the national economy. Because the ALJ found that the Plaintiff was capable of performing her past relevant work, he did not need to reach this fifth step. As such, any apparent inconsistency between the VE's testimony and the DOT regarding the requirements of this position as it is performed in the national economy was simply not relevant to the ALJ's determination. See Harrell v. Astrue, No. 4:06cv00240-FL, 2008 WL 858771, at *15 (E.D.N.C. Mar. 31, 2008) (holding that any potential discrepancy between vocational expert's testimony regarding the appropriate skill level of the plaintiff's prior relevant work and the skill level assigned by the DOT for that position was not material because ALJ determined that plaintiff could still perform past relevant work).

### E. Substantial Evidence for the ALJ's Decision

Finally, the Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Specifically, she argues that the ALJ "dismissed evidence provided on behalf of" the Plaintiff and "relied on his own presumptions, speculations, and suppositions in so doing." [Doc. 11 at 23]. The Plaintiff fails to identify with specificity, however, any evidence that the

ALJ failed to consider or any findings that are presumptive or speculative. Accordingly, the Court finds this argument also to be without merit.

## VII.  CONCLUSION

For the foregoing reasons, the Court concludes that the Commissioner applied the correct legal standards and that there is substantial evidence to support the Commissioner's determination that the Plaintiff is not disabled within the meaning of the Social Security Act.

### O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**, and judgment shall issue simultaneously herewith.

**IT IS SO ORDERED.**

Signed: August 14, 2009

Martin Reidinger
United States District Judge